UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------X
UNITED STATES,

    -against-               **<u>MEMORANDUM & ORDER</u>**

VADIM NEKRITIN and IGOR LOSHAKOV,    10-cr-491(S-1)(KAM)

         *Defendants.*
-----------------------------------X

**MATSUMOTO, United States District Judge:**

        An eight-count Superseding Indictment, filed on July 15, 2010, charges defendants Vadim Nekritin ("Nekritin") and Igor Loshakov ("Loshakov") (collectively, "defendants") with one count of conspiring to commit health care fraud in violation of 18 U.S.C. §§ 1347,[1] 1349[2] and 3551[3] *et seq.* and seven counts of health care fraud in violation of 18 U.S.C. §§ 1347, 2[4] and 3551 *et seq.* (ECF No. 27, Superseding Indictment ("Ind't") ¶¶ 18-21.) The Superseding Indictment also contains a criminal

---

[1]    18 U.S.C. § 1347 provides, in relevant part: "Whoever knowingly and willfully executes, or attempts to execute, a scheme or artifice . . . to defraud any health care benefit program; or . . . to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both."

[2]    18 U.S.C. § 1349 provides that the penalties for conspiracy match those for the substantive underlying offense.

[3]    18 U.S.C. § 3551 *et seq.* generally provides penalties for offenses described in any federal statute.

[4]    18 U.S.C. § 2 provides, in relevant part: "Whoever. . . aids, abets, counsels, commands, induces or procures [the] commission" of an act or "willfully causes an act to be done" against the United States is punishable as a principal.

forfeiture allegation pursuant to 18 U.S.C. § 982.[5]  (Ind't at 8-
9, ¶¶ 17-18.[6])  Presently before the court are: (1) Nekritin's
motion for severance and for a bill of particulars, in which
Loshakov joins; and (2) Loshakov's motion for severance or
dismissal of the Superseding Indictment.  (ECF No. 45, Motion
for Bill of Particulars and to Sever by Vadim Nekritin
("Nekritin Mot."); ECF No. 47, Motion to Sever and/or Dismiss by
Igor Loshakov ("Loshakov Mot.").)  For the reasons set forth
below, defendants' motion to sever is denied, Loshakov's motion
to dismiss the Superseding Indictment is denied, and defendants'
motion for a bill of particulars is granted in part and denied
in part.

<u>**BACKGROUND**</u>

        The facts, as set out in the Superseding Indictment,
the Complaint, and the parties' submissions, are as follows:

        Nekritin and Loshakov are licensed podiatrists with
medical practices in New York and certified to participate in
Medicare, a federal health care program, and Medicaid, a medical
assistance program, funded in part by the federal government.

---

[5]    18 U.S.C. § 982(a)(7) provides that: "The court, in imposing sentence
on a person convicted of a Federal health care offense, shall order the
person to forfeit property, real or personal, that constitutes or is derived,
directly or indirectly, from gross proceeds traceable to the commission of
the offense."

[6]    The last two paragraphs in the Superseding Indictment, containing the
forfeiture allegations, are incorrectly numbered.  The court refers here to
the page numbers as well as the incorrectly numbered paragraphs for clarity.

(Ind't ¶¶ 1-2, 13-15; ECF No. 1, Complaint and Affidavit in Support of Application for Arrest Warrant ("Compl.") ¶¶ 7, 15, 17, 19, 21-24; ECF No. 49, Response in Opposition to Motions for Bill of Particulars and to Sever ("Gov't Resp.") at 2-3.) Nekritin owned a clinic at Avenue U in Brooklyn, New York (the "Avenue U location"), and also maintained two practices in Forrest Hills and Far Rockaway, New York. (Ind't ¶ 15; Compl. ¶¶ 19, 22-23; Gov't Resp. at 3; ECF No. 45-2, Affidavit of Vadim Nekritin ("Nekritin Aff.") at 1.) Loshakov maintained a separate practice in Gravesend Neck Avenue in Brooklyn, New York, and at times worked out of Nekritin's Forrest Hills and Avenue U locations. (Ind't ¶ 15; Compl. ¶¶ 21-22, 24; Gov't Resp. at 3; Nekritin Aff. at 2.) Loshakov indicated in his Medicare application that he was employed by VYN Podiatry, a corporation owned by Nekritin, and his Medicare correspondence should be sent to the Avenue U location. (Compl. ¶ 21; Gov't Resp. at 3.) In addition, Loshakov used the standard patient charts and billing forms that were used by Nekritin and other podiatrists at the Avenue U location, and billing forms relating to care provided by Loshakov contained the header "VADIM NEKRITIN DPM." (Gov't Resp. at 3.) The defendants, at times, treated the same patients. (*Id.*; Ind't ¶ 15; Compl. ¶ 22.)

The government alleges that the defendants solicited Medicare and Medicaid beneficiaries and provided them with a

3

variety of podiatric services.  (Ind't ¶ 16; Gov't Resp. at 3.)
Between 2005 and 2010, according to the government, the
defendants falsely billed Medicare and Medicaid for a number of
chemical cauterizations[7] that they did not in fact perform.
(Ind't ¶ 17; Compl. ¶¶ 25-29; Gov't Resp. at 3-4.)

By motion dated March 3, 2011, defendant Nekritin
moves for (1) severance from his co-defendant Loshakov, pursuant
to Federal Rules of Criminal Procedure 8(b) and 14; and (2) a
bill of particulars pursuant to Federal Rule of Criminal
Procedure 7(f).  (Nekritin Mot.)  By motion dated March 3, 2011,
defendant Loshakov moved for severance from co-defendant
Nekritin or dismissal of the Superseding Indictment.  (Loshakov
Mot.)  In addition, Loshakov indicated that he incorporated and
agreed with Nekritin's submissions.  (*Id.*)  The government filed
an opposition to defendants' motions on March 21, 2011.  (Gov't
Resp.)  Defendants did not file replies, despite having the
opportunity to do so.  Each ground for relief requested is
discussed below.

---

[7]     Chemical cauterization is a surgical procedure performed by podiatrists
involving the burning of tissue with a caustic chemical substance in order to
destroy tissue formed when an intrusion becomes embedded in a chronically
open wound.  (Ind't ¶ 8; Compl. ¶ 13; Gov't Resp. at 2.)

## DISCUSSION

### A. Severance Pursuant to Fed. R. Crim. P. 8(b)

Defendants move for severance pursuant to Federal Rule of Criminal Procedure 8(b), arguing that joinder is improper absent a "common plan or scheme" or "substantial identity of facts or participants," and that "a common sense approach does not show a substantial identity of facts or participants, making joinder improper." (ECF No. 46, Memorandum of Law in Support of Motion for Bill of Particulars and to Sever ("Nekritin Mem.") at 2-4.) Loshakov further argues that the government cannot show that defendants were partners in practice at the Avenue U location, mandating severance. (Loshakov Mot. at 5.[8]) The government opposes severance, arguing that the Superseding Indictment alleges that defendants Nekritin and Loshakov were co-conspirators and participated in the same series of acts or transactions, and that joinder pursuant to Rule 8(b) is proper. (Gov't Resp. at 11.) Because the court finds that the Superseding Indictment alleges that the defendants participated in a common plan or scheme, the defendants are properly joined pursuant to Rule 8(b).

---

[8] As Loshakov's motion is not paginated, the court refers to the page numbers assigned by the Electronic Case Filing System ("ECF").

### a. <u>Legal Standard</u>

Federal Rule of Criminal Procedure 8(a) governs the joinder of offenses, and Federal Rule of Criminal Procedure 8(b) governs the joinder of defendants. Fed. R. Crim. P. 8(a)-(b). Where there is joinder of both offenses and defendants, courts should apply Rule 8(b) to determine whether joinder is proper. *See United States v. Turoff*, 853 F.2d 1037, 1043 (2d Cir. 1988); *see also United States v. Attanasio*, 870 F.2d 809, 814 (2d Cir. 1989) ("Where, as here, the joinder involves both multiple offenses and multiple defendants, Rule 8(b) must be applied."). Rule 8(b) allows joinder of two defendants if "if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). Further, the rule provides that "[t]he defendants may be charged in one or more counts together or separately" and that "[a]ll defendants need not be charged in each count." *Id.*

The Second Circuit has interpreted the "same series of acts or transactions" language of Rule 8(b) to mean that "joinder is proper where two or more persons' criminal acts are unified by some substantial identity of facts or participants, or arise out of a common plan or scheme." *United States v. Rittweger*, 524 F.3d 171, 177 (2d Cir. 2008) (internal quotation marks and citations omitted); *see also United States v. Stewart*,

433 F.3d 273, 314 (2d Cir. 2006) (noting that Rule 8(b) language has been interpreted to mean that the charged offense must be unified by substantial identity of facts and defendants, or a common plan or scheme); *Attanasio*, 870 F.2d at 815 (similar). Courts must "apply a 'commonsense rule' to decide whether, in light of the factual overlap among charges, joint proceedings would produce sufficient efficiencies such that joinder is proper notwithstanding the possibility of prejudice to either or both of the defendants resulting from the joinder." *Rittweger*, 524 F.3d at 177 (internal quotation marks and citations omitted). Further, "[u]nder the plain language of Rule 8(b), the decision to join parties turns on what is 'alleged' in the 'indictment,'" not what the facts will or are expected to show at trial. *Id.* at 178.

### b. Application

Based on the record before the court, defendants Nekritin and Loshakov are properly joined pursuant to Rule 8(b). The Superseding Indictment alleges that the defendants participated in the same conspiracy to commit health care fraud by submitting claims to Medicare and Medicaid for chemical cauterizations that they did not perform. (Ind't ¶¶ 17-21; *see also* Gov't Resp. at 11-12.) Further, the Superseding Indictment alleges that the defendants submitted these false claims, in part, while working out of the same office, treating some of the

same patients, and using the same billing forms. (Ind't ¶¶ 15-17; Gov't Resp. at 11-12.) Therefore, defendants Nekritin and Loshakov participated in the "same series of acts or transactions" in that the offenses "arise out of a common plan or scheme," i.e. the conspiracy to defraud Medicare and Medicaid. *See Rittweger*, 524 F.3d at 177; *see also* Fed. R. Crim. P. 8(b). Severance of their trials would require the government to prove the same conspiracy twice. *See Stewart*, 433 F.3d at 314 (finding that joinder was proper because the common factual elements of the charges and evidence would have required duplicate trials). Thus, joinder is proper pursuant to Rule 8(b).

The fact that the substantive health care fraud counts relate to each defendant individually does not change the outcome. (*See* Ind't ¶ 21 (table listing substantive health care fraud charges by defendant).) First, even assuming that counts two through eight charge the defendants individually with health care fraud,[9] Rule 8(b) specifically provides that "[a]ll defendants need not be charged in each count." Fed. R. Crim. P. 8(b). Second, the individual health care fraud counts two through eight all arise out of the same common scheme or plan,

---

[9]     It is unclear whether counts two through eight of the Superseding Indictment charge the defendants with health care fraud individually or as acting in concert. This issue is discussed further in the discussion regarding defendants' motion for a bill of particulars, *infra*.

i.e. a scheme to defraud Medicare and Medicaid by submitting false claims for chemical cauterizations that were not provided. Moreover, it is not necessary for the government to show that defendants Nekritin and Loshakov were partners in the practice at the Avenue U location.  It is enough that the Superseding Indictment alleges that the defendants participated in the health care fraud conspiracy and that the individual health care fraud counts charge substantive acts of health care fraud involving the same scheme to defraud Medicare and Medicaid upon which the conspiracy count is based.  *See Rittweger*, 524 F.3d at 178 (noting that Rule 8(b) focuses on what is alleged in the indictment, and not what is shown at trial).

Consequently, the defendants are properly joined in the Superseding Indictment pursuant to Rule 8(b), and their motion for severance on this ground is denied.

## B. Severance Pursuant to Fed. R. Crim. P. 14

Defendants further contend that even if joinder is proper under Rule 8(b), the court should nevertheless sever pursuant Federal Rule of Criminal Procedure 14.  (Nekritin Mem. at 4-8.)  Because the substantive health care fraud counts relate to each defendant individually, defendants argue that a joint trial would subject them to spillover prejudice.  (*Id.* at 5-6.)  Further, defendants argue that a jury instruction would be insufficient to prevent prejudice, and that judicial economy

is not served by a joint trial given that each count will likely be proven by separate witnesses and documents. (*Id.* at 7-8.) Loshakov further argues that there is less evidence against him than against Nekritin, and thus severance is warranted. (Loshakov Mot. at 4-5.)

The government opposes severance under Rule 14, arguing that the grounds for severance offered by defendants are meritless because there is no "serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." (Gov't Resp. at 13, 15-17.) The government argues that a joint trial is appropriate because defendants are charged with participating in a health care fraud conspiracy, and thus evidence relating to the scope of the conspiracy would be admissible against both defendants whether tried together or separately. (*Id.* at 15-16.) In addition, the government argues that a limiting instruction would suffice to avoid any prejudice created by a joint trial, even if the court found that evidence is not admissible to show the scope of the conspiracy. (*Id.* at 16.) Finally, the government argues that even if the quantity or quality of the evidence against Nekritin is greater than that against Loshakov, severance is not warranted. (*Id.* at 17.) Because defendants have not shown that

severe prejudice will result from a joint trial, their motion
for severance pursuant to Rule 14 is denied.

      **a. <u>Legal Standard</u>**

        "There is a preference in the federal system for joint
trials of defendants who are indicted together" because joint
trials "promote efficiency and serve the interests of justice by
avoiding the scandal and inequity of inconsistent verdicts."
*Zafiro v. United States*, 506 U.S. 534, 537 (1993) (internal
quotation marks and citation omitted); *see also Richardson v.
Marsh*, 481 U.S. 200, 210 (1987) ("It would impair both the
efficiency and the fairness of the criminal justice system to
require . . . that prosecutors bring separate proceedings,
presenting the same evidence again and again, requiring victims
and witnesses to repeat the inconvenience (and sometimes trauma)
of testifying, and randomly favoring the last-tried defendants
who have the advantage of knowing the prosecution's case
beforehand."). "This preference is particularly strong where,
as here, the defendants are alleged to have participated in a
common plan or scheme." *United States v. Salameh*, 152 F.3d 88,
115 (2d Cir. 1998) (per curiam).

        Indeed, where joinder is proper, as the court has
already determined here, a court "should grant a severance under
Rule 14 only if there is a serious risk that a joint trial would
compromise a specific trial right of one of the defendants, or

prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro*, 506 U.S. at 539. Thus, a defendant seeking severance "must show prejudice so severe as to amount to a denial of a constitutionally fair trial." *United States v. Spinelli*, 352 F.3d 48, 55 (2d Cir. 2003) (internal quotation marks and citation omitted). Yet, the possibility of prejudice alone does not necessarily mandate severance pursuant to Rule 14. *See Zafiro*, 506 U.S. at 538-39. Rather, Rule 14 "leaves the tailoring of the relief to be granted, if any, to the district court's sound discretion." *Id.*

b. **Application**

Severance under Rule 14 is not warranted in the instant case. Defendants are charged with participating in a conspiracy to commit health care fraud by submitting false Medicare and Medicaid claims. (Ind't ¶¶ 17-21.) Because defendants are charged with participating in the same conspiracy, the risk of prejudice presented by a joint trial is minimal and the preference for a joint trial strong. *See Salameh*, 152 F.3d at 115 (noting that preference for joint trials "is particularly strong where, as here, the defendants are alleged to have participated in a common plan or scheme"); *Spinelli*, 352 F.3d at 55 (stating that "[j]oint trials are often particularly appropriate in circumstances where the defendants are charged with participating in the same criminal

12

conspiracy"). As the government points out, evidence relating to the scope of the conspiracy will likely be admissible against both defendants, regardless of whether they are tried separately or together, limiting the risk of spillover prejudice. Moreover, "even the fact that evidence may be admissible against one defendant but not another does not necessarily require a severance." *Spinelli*, 352 F.3d at 56 (internal quotation marks and citation omitted); *see also Rittweger*, 524 F.3d at 179.

Nor does the quantity or quality of evidence available require severance here. "There are, of course, cases in which the sheer volume and magnitude of the evidence against one defendant so dwarfs the proof presented against his co-defendant that a severance is required to prevent unacceptable spillover prejudice." *Spinelli*, 352 F.3d at 55. However, "[d]iffering levels of culpability and proof are inevitable in any multi-defendant trial and, standing alone, are insufficient grounds for separate trials. Even joint trials involving defendants who are only marginally involved alongside those heavily involved are constitutionally permissible." *Id.* Even if more evidence may be available against Nekritin than against Loshakov, without more, severance is not required.

Finally, the court finds that any risk of spillover prejudice and jury confusion presented by a joint trial in this case can be properly remedied by limiting instructions. *See*

*United States v. Feyrer*, 333 F.3d 110, 115 (2d Cir. 2003)

(upholding ruling by district court that "to the extent that any

prejudice arose [by trying the defendants together] it could be

cured by jury instructions and by the careful presentation of

evidence by competent counsel").  Jurors are presumed to follow

limiting instructions, and there is no reason to believe that

such instruction would be insufficient here.  *See Zafiro*, 506

U.S. at 540-41 (noting that "juries are presumed to follow their

instructions" (internal quotation marks and citation omitted)).

The parties will have an opportunity to propose limiting

instructions during the trial and to submit proposed jury

charges to the court, and defendants may suggest instructions to

limit any spillover prejudice presented by the joint trial.

Consequently, because defendants have not shown that

they will suffer severe prejudice as a consequence of a joint

trial, their motion for severance under Rule 14 is denied.

### C. Dismissal of Superseding Indictment as to Loshakov

Defendant Loshakov further moves for an order

dismissing the Superseding Indictment as to Loshakov "based on

the government's attempted [sic] to make the co-defendants

partners at" the Avenue U location.  (Loshakov Mot. at 1.)

Loshakov, however, does not cite to any legal authority to

support his argument that dismissal of the Superseding

Indictment is warranted here.  Nor can the court discern a

proper reason for dismissal.  Accordingly, Loshakov's motion to dismiss the Superseding Indictment is denied.

## D. Bill of Particulars Pursuant to Fed. R. Crim. P. 7(f)

Defendants next move for a bill of particulars under Federal Rule of Criminal Procedure 7(f).  The particulars sought by defendants can be summarized as follows: (1) factual basis and specific conduct supporting the health care fraud conspiracy charged in count one; (2) specific conduct supporting the solicitation of Medicare and Medicaid patients as alleged in paragraph 16 of the Superseding Indictment; (3) the means by which defendants "operated" the Avenue U location as alleged in paragraph 15 of the Superseding Indictment; (4) the allegedly false Medicare and Medicaid claims; and (5) clarification whether, with respect to counts two through eight, the defendants are alleged to have acted individually or in concert and, if in concert, the specific conduct supporting that allegation.  (ECF No. 45-3, Demand for Bill of Particulars ("Bill of Particulars").)  The government opposes, arguing that "[t]he superseding indictment, viewed together with the complaint that was filed on March 22, 2010 and the information the government has provided in discovery, adequately informs Nekritin and Loshakov of the charges against them."  (Gov't Resp. at 7-9.)  The defendants' request for a bill of particulars is granted in part and denied in part.

### a. **Legal Standard**

The decision of whether to grant a bill of particulars under Rule 7(f) of the Federal Rules of Criminal Procedure is one which rests within the sound discretion of the trial court. *See, e.g.*, *United States v. Bortnovsky*, 820 F.2d 572, 574 (2d Cir. 1987).  In exercising that discretion, a trial court is guided by the limited function that a bill of particulars is designed to achieve, namely, to allow a defendant "to identify with sufficient particularity the nature of the charge pending against him, thereby enabling defendant to prepare for trial, to prevent surprise, and to interpose a plea of double jeopardy should he be prosecuted a second time for the same offense." *Id.*

Notably, the "[a]cquisition of evidentiary detail is not the function of the bill of particulars." *United States v. Torres*, 901 F.2d 205, 234 (2d Cir. 1990), *abrogated on other grounds by United States v. Marcus*, 628 F.3d 36, 41-43 (2d Cir. 2010) (upholding denial of bill of particulars where requests amounted to "ill-disguised attempts at general pre-trial discovery") (internal quotation marks and citation omitted); *see also United States v. Feola*, 651 F. Supp. 1068, 1123 (S.D.N.Y. 1987), *aff'd without op.*, 875 F.2d 857 (2d Cir. 1989) (noting "courts have refused to treat a bill of particulars as a general investigative tool for the defense, or as a device to compel

disclosure of the Government's evidence or its legal theory prior to trial"); *United States v. Frutcher*, 104 F. Supp. 2d 289, 311 (S.D.N.Y. 2000) (stating that "[a] bill of particulars is not meant to be a tool to compel disclosure of the Government's case before trial").  Accordingly, "[a] bill of particulars should be required *only* where the charges of the indictment are so general that they do not advise the defendant of the specific acts of which he is accused."  *Torres*, 901 F.2d at 234 (emphasis added) (internal quotation marks and citations omitted).  The proper inquiry is not whether the requested information would be helpful to the defense (which it almost invariably would), but rather whether the information is *necessary* to the defense.  *See id.* ("The function of a bill of particulars is to provide defendant with information about the details of the charge against him if this is *necessary* to the preparation of his defense, and to avoid prejudicial surprise at the trial." (emphasis added) (internal quotations omitted)); *see also United States v. Chalmers*, 410 F. Supp. 2d 278, 286 (S.D.N.Y. 2006) ("In determining whether to grant a bill of particulars, the question is not whether the information would be useful to the defense, but rather whether it is necessary.").

In determining whether information is necessary to the defense, the trial court "must examine the totality of the information available to the defendant, including the indictment

and general pre-trial discovery." *United States v. Solomonyan*, 452 F. Supp. 2d 334, 349 (S.D.N.Y. 2006) (internal quotation marks and citation omitted). Even where an indictment contains some apparent deficiency, "if the information sought . . . is provided in the indictment or in some acceptable alternate form, no bill of particulars is required." *Bortnovsky*, 820 F.2d at 574; *see also United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999) (noting that "a bill of particulars is not necessary where the government has made sufficient disclosures concerning its evidence and witnesses by other means" including discovery which "adequately differentiated the charges" and prevented surprise at trial).

However, "[t]he Government [does] not fulfill its obligation merely by providing mountains of documents to defense counsel who were left unguided" as to which documents are relevant to the charged conduct. *Bortnovsky*, 820 F.2d at 575; *see also United States v. Bin Laden*, 92 F. Supp. 2d 225, 234 (S.D.N.Y. 2000) ("It is no solution to rely solely on the quantity of information disclosed by the government; sometimes, the large volume of material disclosed is precisely what necessitates a bill of particulars."). On the other hand, no bill of particulars is warranted where the Indictment, discovery, and other information provided by the government

adequately notify defendants of the charges against them.  *See Walsh*, 194 F.3d at 47; *Bortnovsky*, 820 F.2d at 574.

### b. Application

Defendants' request for particulars relating to the health care fraud conspiracy, the solicitation of Medicare and Medicaid patients, and the operation of the Avenue U location is denied.  The purpose of a bill of particulars is not to disclose the "whens," "wheres" and "with whoms" of the allegations.  *See United States v. Jimenez*, 824 F. Supp. 351, 363 (S.D.N.Y. 1993).  "The prosecution need not particularize all of its evidence." *United States v. Davidoff*, 845 F.2d 1151, 1154 (2d Cir. 1988).  Nor is the government required to "disclos[e] the manner in which it will attempt to prove the charges, the precise manner in which the defendant committed the crime charged, or a preview of [its] evidence or legal theories."  *United States v. Mitlof,* 165 F. Supp. 2d 558, 569 (S.D.N.Y. 2001).

Further, "[a]s a general rule, the defendant does not 'need' detailed evidence about the conspiracy in order to prepare for trial properly" for "[i]t is well settled that defendants need not know the means by which it is claimed they performed acts in furtherance of the conspiracy nor the evidence which the Government intends to adduce to prove their criminal acts."  *Feola*, 651 F. Supp. at 1132 (citing *United States v. Carroll*, 510 F.2d 507, 509 (2d Cir. 1975) ("There is no general

requirement that the government disclose in a bill of particulars all the overt acts it will prove in establishing a conspiracy charge.") (internal citation omitted)).

In the instant case, the requests for the factual support and specific conduct supporting the allegations that the defendants participated in a conspiracy, the solicitation of Medicare and Medicaid patients, and the operation of the Avenue U location are, in essence, requests for the government to disclose how it intends to prove the charges against the defendants at trial. The Superseding Indictment, Complaint, and other government submissions provide defendants sufficient details about the charges against them, and a bill of particulars is not "necessary to the preparation of [their] defense, [or] to avoid prejudicial surprise at the trial." *Torres*, 901 F.2d at 234. Therefore, defendants' request for particulars relating to the factual support or specific conduct supporting certain allegations in the Superseding Indictment is denied.

The request for information relating to the specific claims alleged to be have been falsely submitted to Medicare and Medicaid is also denied. The Second Circuit has ruled that a bill of particulars is necessary when the government alleges that a few unspecified transactions, part of a larger pool, are fraudulent, because defendants "were forced to explain the

20

events surrounding [legitimate transactions] and to confront

numerous documents unrelated to the charges pending" against

them. *Bortnovsky*, 820 F.2d at 574. In the instant case,

however, the government has identified the specific Medicare and

Medicaid claims that it alleges are fraudulent. (*See* Ind't

¶ 21.) The Superseding Indictment details, by count, each

allegedly fraudulent claim, the initials of the beneficiary, the

claim dates, and the items billed. (*Id.*) The defendants have

not been left to discern the allegedly fraudulent claims from

legitimate ones, nor will defendants be forced to explain the

circumstances surrounding uncharged, legitimate claims.

Therefore, the request for particulars regarding the specific

alleged false claims is denied. *See United States v. Mahaffy*,

446 F. Supp. 2d 115, 119-20 (E.D.N.Y. 2006) (denying bill of

particulars requesting information relating to allegedly

unlawful transactions when the indictment and other government

submissions provided enough details and identified the unlawful

transactions specifically).

Nonetheless, the court notes that the Superseding

Indictment charges that the defendants participated in the

conspiracy to commit health care fraud "[i]n or about January

2005 and January 2010," whereas the specific alleged false

claims were submitted between September 2007 and February 2009.

(Ind't ¶¶ 19, 21.) Similarly, the government's opposition to

defendants' motions states that "[b]etween 2005 and 2010, the defendants billed Medicare and Medicaid on numerous occasions for chemical cauterizations of granulation tissue which, based on interviews with the defendants' patients, the defendants never performed."  (Gov't Resp. at 3.)  To the extent that the health care fraud conspiracy count is based on alleged false claims or on the solicitation of Medicare and Medicaid beneficiaries independent from the claims and beneficiaries specified in counts two through eight of the Superseding Indictment, the court orders that the government provide defendants with a bill of particulars containing this information.  Without it, the defendants are left to determine which claims for which beneficiaries are alleged to form the basis of the health care fraud conspiracy, and to defend legitimate claims unrelated to the conspiracy charge, which would impermissibly shift the burden of proof to the defendants. *See Bortnovsky*, 820 F.2d at 574.  Accordingly, by May 13, 2011, the government shall produce a bill of particulars identifying the alleged false claims on behalf of solicited or unsolicited Medicare and Medicaid beneficiaries that form the basis of the health care fraud conspiracy charge in the Superseding Indictment.

Finally, with respect to counts two through eight, the defendants request for clarification whether they are alleged to

have acted in concert and, if so, the specific conduct
supporting that allegation, is granted in part and denied in
part.  The court finds that the language in the Superseding
Indictment relating to counts two through eight is vague as to
whether the defendants acted individually or "together with
others" regarding the charges of health care fraud.  While the
table listing the allegedly fraudulent Medicare and Medicaid
claims specify the defendant associated with each claim, the
language immediately preceding the table refers to both
defendants acting "together."  (Ind't ¶ 21.)  It is unclear
whether the defendant listed in the table refers to the
individual defendant charged with that count or to the defendant
who submitted the alleged false claim.  The information
contained in the Complaint does nothing to clarify the scope of
the substantive health care fraud counts.  Moreover, although
the government refers to discovery provided to the defendants
sufficient to give notice of the charges against each of them
(*see* Gov't Resp. at 7), no details regarding this discovery has
been provided to the court.  Accordingly, by May 13, 2011, the
government shall produce a bill of particulars clarifying with
respect to counts two through eight of the Superseding
Indictment whether the defendants are alleged to have acted in
concert.

The request for particulars relating to the specific conduct supporting the allegation, if any, that the defendants acted in concert with respect to counts two through eight is denied. As noted above, the "[a]cquisition of evidentiary detail is not the function of the bill of particulars," *Torres*, 901 F.2d at 234, and defendants are not entitled to the "whens," "wheres" and "with whoms" of the allegations. *See Jimenez,* 824 F. Supp. at 363.

<u>**CONCLUSION**</u>

For the foregoing reasons, the court finds that: (1) defendants' motions for severance pursuant to Federal Rules of Criminal Procedure 8(b) and 14 are denied; (2) Loshakov's motion for dismissal of the Superseding Indictment against him is denied; and (3) defendants' motion for a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f) is granted in part and denied in part. By May 13, 2011, the government shall provide defendants with a bill of particulars with information concerning: (1) the alleged false claims on behalf of solicited and unsolicited Medicare and Medicaid beneficiaries

/

/

/

/

/

that form the basis of the health care fraud conspiracy count in the Superseding Indictment; and (2) whether, with respect to the substantive health care fraud claims in counts two through eight, the defendants are alleged to have acted in concert.

**SO ORDERED.**

Dated:      May 3, 2011
            Brooklyn, New York

                                    _____
                                              /s/
                                    **KIYO A. MATSUMOTO**
                                    United States District Judge
                                    Eastern District of New York