UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X
UNITED STATES

                                                       <u>NOT FOR PUBLICATION</u>

       v.

                                                     **MEMORANDUM & ORDER**
                                                     10-CR-491(S-2) (KAM)

VADIM NEKRITIN and IGOR LOSHAKOV,

               Defendants.
----------------------------------------X

**MATSUMOTO, United States District Judge:**

         Defendants Vadim Nekritin ("Dr. Nekritin") and Igor Loshakov ("Dr. Loshakov") (collectively, "defendants") are charged by a May 31, 2011 second Superseding Indictment[1] with conspiracy to commit health care fraud, in violation of 18 U.S.C. §§ 1349[2] and 3551[3] *et seq.*, and substantive counts of

---

[1] The defendants were initially charged by a Sealed Complaint dated Mar. 23, 2010. (*See* ECF No. 1, Sealed Complaint as to Vadim Nekritin, Zhanna Glikman, Igor Loshakov; ECF No. 6, Order to Unseal Case dated Mar. 24, 2010.) On June 23, 2010, Dr. Nekritin was charged by an Indictment. (*See* ECF No. 23, Indictment as to Vadim Nekritin dated June 23, 2010.) Drs. Nekritin and Loshakov were both subsequently charged by a Superseding Indictment dated July 15, 2010. (*See* ECF No. 27, Superseding Indictment (S-1) as to Vadim Nekritin and Igor Loshakov.) On May 31, 2011, Drs. Nekritin and Loshakov were charged by a second Superseding Indictment. (*See* ECF No. 58, Superseding Indictment (S-2) as to Vadim Nekritin and Igor Loshakov.) Defendants were arraigned on the second Superseding Indictment on June 3, 2011. (*See* ECF No. 64, Minute Entry dated June 3, 2011.)

[2] 18 U.S.C. § 1349 provides that "[a]ny person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

[3] 18 U.S.C. §§ 3551 *et seq.* generally provide penalties for offenses described in any federal statute.

1

health care fraud, in violation of 18 U.S.C. §§ 1347[4] and 3551 *et seq.* (*See* ECF No. 58, Superseding Indictment (S-2) as to Vadim Nekritin, Igor Loshakov ("Ind't").)[5]

The court assumes that the parties are familiar with the allegations and procedural history of this case.[6] In general, the charges against defendants allege that in or about and between January 2005 and January 2010, they submitted or caused to be submitted to Medicare and Medicaid claims falsely billing for chemical cauterizations of granulation tissue ("CCGT") when those procedures were not medically necessary and had not been provided to the Medicare and Medicaid beneficiaries. (*Id.*) Trial is scheduled to commence on June 20, 2011.

---

[4] 18 U.S.C. § 1347 provides, in part, that "[w]hoever knowingly and willfully executes, or attempts to execute, a scheme or artifice (1) to defraud any health care benefit program; or (2) to obtain, by means of false or fraudulent pretenses, representations, or promises, any of the money or property owned by, or under the custody or control of, any health care benefit program, in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 10 years, or both."

[5] Count one of the second Superseding Indictment charges Drs. Nekritin and Loshakov with conspiracy to commit health care fraud, in violation of 18 U.S.C. §§ 1349 and 3551 *et seq.* (Ind't ¶¶ 18-19.) Counts two through five charge Dr. Nekritin with health care fraud and counts six through eight charge Dr. Loshakov with health care fraud, in violation of 18 U.S.C. §§ 1347 and 3551 *et seq.* (*Id.* ¶¶ 20-21.)

[6] The allegations are set out in the Complaint (*see* ECF No. 1, Sealed Complaint as to Vadim Nekritin, Zhanna Glikman, Igor Loshakov), second Superseding Indictment (*see* Ind't), and other government submissions (*see, e.g.*, ECF No. 52, Letter Providing Bill of Particulars and Rule 16 Discovery; ECF No. 54, Letter Supplementing the Government's Bill of Particulars).

Now before the court are two motions *in limine* filed by the government. The government's first motion *in limine*, dated May 25, 2011, seeks leave to admit evidence at trial concerning an unrelated 2008 administrative overpayment proceeding in which Dr. Nekritin appealed a finding of overpayment by Medicare with respect to several podiatric services. (ECF No. 53, Motion in Limine To Admit Evidence of Prior Administrative Proceedings ("Gov't 5/25/11 Mot." or "Gov't First Mot.") at 1.) The government's second motion *in limine*, dated May 31, 2011, seeks "to preclude the defendants from arguing, eliciting on cross-examination, or offering evidence that (1) portions of their practices were legitimate, including, but not limited to, some billings for [CCGT] and (2) Medicare and Medicaid should not have paid the claims at issue if the programs did not believe the CCGT procedures were properly billed, or that Medicare and Medicaid, by paying prior claims to defendants, led the defendants to believe their fraudulent billing practices were justified." (ECF No. 55, Motion in Limine To Exclude Irrelevant Evidence at Trial ("Gov't 5/31/11 Mot." or "Gov't Second Mot.") at 1.)

Dr. Loshakov filed an opposition on June 2, 2011. (ECF No. 60, Letter to Judge Kiyo Matsumoto ("Loshakov Opp.").) Dr. Nekritin filed an opposition on June 8, 2011. (ECF No. 65, Response in Opposition ("Nekritin Opp.").) The government filed

3

a reply on June 10, 2011.  (ECF No. 66, Reply to Response
("Gov't Reply").)  Dr. Nekritin filed a sur-reply on June 15,
2011.[7]  (ECF No. 77, Reply to Response ("Nekritin Sur-Reply").)
Having reviewed the parties' submissions, the court denies the
government's 5/25/11 motion *in limine* and grants the
government's 5/31/11 motion *in limine*.

## DISCUSSION

I. **Legal Standards**

   A. **Motions *In Limine***

   The purpose of a motion *in limine* is to allow the
trial court to rule in advance of trial on the admissibility of
certain forecasted evidence.  *See Luce v. United States*, 469
U.S. 38, 40 n.2 (1984) (explaining that the motion *in limine* is
used "to exclude anticipated prejudicial evidence before the
evidence is actually offered"); *see also Palmieri v. Defaria*, 88
F.3d 136, 141 (2d Cir. 1996) ("The purpose of an in limine
motion is to aid the trial process by enabling the Court to rule
in advance of trial on the relevance of certain forecasted
evidence, as to issues that are definitely set for trial,
without lengthy argument at, or interruption of, the trial."
(internal quotation marks and citation omitted)); *Nat'l Union*

---

[7] Because Dr. Nekritin's sur-reply was unauthorized and tardy, the court need not consider it.  However, because Dr. Nekritin predicates his sur-reply on the government's *Brady* disclosures on June 13, 2011, and in the interest of resolving pending motions on a complete record before trial, the court has considered the issues raised by Dr. Nekritin's sur-reply, as noted herein.

*Fire Ins. Co. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 283 (S.D.N.Y. 1996) (quoting *Palmieri*, 88 F.3d at 141). "Evidence should be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 192, 193 (S.D.N.Y. 2001); *see also Nat'l Union Fire Ins. Co.*, 937 F. Supp. at 287. Courts considering a motion *in limine* may reserve judgment until trial so that the motion is placed in the appropriate factual context. *See Nat'l Union Fire Ins. Co.*, 937 F. Supp. at 287. Alternatively, a judge is "free, in the exercise of sound judicial discretion, to alter a previous *in limine* ruling" at trial as "the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer." *Luce*, 469 U.S. at 41–42.

**B. Relevance (Rules 401 & 402)**

As an initial matter, evidence must be "relevant" to be admissible. Fed. R. Evid. 402 ("Evidence which is not relevant is not admissible."). The Federal Rules of Evidence define "relevant" evidence as that "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. "'Evidence need not be conclusive in order to be relevant.'" *United States v. Schultz*, 333 F.3d 393, 416 (2d Cir. 2003)

5

(quoting *Contemporary Mission, Inc. v. Famous Music Corp.*, 557 F.2d 918, 927 (2d Cir. 1977)).  "'Nonconclusive evidence should still be admitted if it makes a proposition more probable than not; factors which make evidence less than conclusive affect only weight, not admissibility.'"  *Schultz*, 333 F.3d at 416 (quoting *S.E.C. v. Singer*, 786 F. Supp. 1158, 1166 (S.D.N.Y. 1992)).

### C. Exclusion of Evidence on Grounds of Prejudice, Confusion, or Waste of Time (Rule 403)

Finding that evidence is relevant, however, does not end the inquiry.  Federal Rule of Evidence 403 grants a district court discretion to exclude relevant evidence on the grounds of prejudice, confusion, or waste of time.  The rule provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Fed. R. Evid. 403.

### II. Evidence Concerning Prior Finding of Overpayment With Respect To Dr. Nekritin

The government's first motion *in limine* seeks leave to introduce evidence at trial concerning an administrative proceeding in which Dr. Nekritin appealed a finding by Medicare that it had overpaid him with respect to several podiatric services.  (Gov't First Mot. at 1.)  That administrative

6

proceeding stemmed in part from claims submitted to Medicare by Dr. Feliks Sosnovsky, who died in December 2004 and was the former principal and owner of the podiatric practice subsequently purchased by Dr. Nekritin. (*Id.;* Nekritin Opp. at 2; ALJ Appeal No. 1-214515991, Office of Medicare Hearings & Appeals, Dep't of Health & Human Servs., Decision dated Apr. 1, 2008 ("ALJ Decision") at 1, 3-4.) In 2005, after Dr. Nekritin purchased Dr. Sosnovsky's former practice, he received an overpayment notice from Medicare demanding, *inter alia*, repayment for allegedly improper billings for CCGT under Current Procedural Terminology ("CPT") Code 17250 discovered during audits performed in 2001 and 2004, and for continuing to submit claims under Dr. Sosnovsky's provider identification number ("PIN") after his death. (Nekritin Opp. at 2; ALJ Decision at 1, 3-4, 8.) Dr. Nekritin appealed Medicare's findings of overpayment. (Nekritin Opp. at 2; ALJ Decision at 2.) In January 2008, Dr. Nekritin testified at a hearing before an administrative law judge ("ALJ"). (Nekritin Opp. at 2; ALJ Decision at 2.) With respect to the claims for CCGT submitted under CPT Code 17250, the ALJ found:

> The record does not indicate that this procedure was furnished to *any* beneficiaries for any dates of services. Thus, it appears that this CPT code was reported in error. [Dr. Nekritin's] coding expert, Ms. Thelian, agreed with the QIC determination that the medical documentation did not support the claims for chemical cauterization for granulation tissue

7

>           (17250). [Dr. Nekritin] did not dispute his expert's
>           finding and provided no additional evidence to justify
>           payment for these services. Therefore, all claims for
>           chemical cauterization for granulation tissue (17250)
>           will remain denied.

(ALJ Decision at 11 (emphasis in original).)

At trial, the government seeks to introduce (1) the recording of the administrative hearing before the ALJ containing the testimony of Dr. Nekritin and the coding expert, Ms. Thelian; and (2) evidence of the ALJ's finding that the CCGT procedure was not furnished to any beneficiaries. (Gov't First Mot. at 2; Gov't Reply at 1.) The government intends to offer this evidence to "demonstrate that at the time of the crimes alleged in the indictment, Nekritin understood that he could only bill Medicare using the CPT code 17250 if he in fact performed a chemical cauterization of granulation tissue." (Gov't First Mot. at 2.)

Dr. Nekritin opposes the government's motion on several grounds. First, Dr. Nekritin argues that any evidence concerning the administrative hearing testimony and the ALJ's decision is irrelevant, as it relates to billings performed by another podiatrist prior to the alleged instant offense. (Nekritin Opp. at 2-3.) Dr. Nekritin notes that he completed his residency in 2004 and was not employed by Dr. Sosnovsky until July 2004. (*Id.* at 2.) Dr. Nekritin further notes that he "did not testify at the ALJ hearing about the chemical

cauterization billings at issue" and "[t]herefore, Dr. Nekritin's testimony does not bear any nexus to the crimes charged in the indictment, which focus on chemical cauterization." (*Id.* at 3.) Additionally, Dr. Nekritin argues that the government mischaracterized the ALJ's finding in that the ALJ merely found the documentation did not support the conclusion that a CCGT procedure was provided; the ALJ did not conclude definitively that the procedure was not, in fact, provided. (*Id.* at 3-4.) Further, Dr. Nekritin challenges the introduction of this evidence by arguing that it is both inadmissible character evidence, of which he received inadequate notice, and inadmissible hearsay. (*Id.* at 4-5.) *See* Fed. R. Evid. 404(b), 802. Dr. Nekritin also argues that even if this evidence is otherwise admissible, its probative value is substantially outweighed by the danger of unfair prejudice. (Nekritin Opp. at 6.) *See* Fed. R. Evid. 403. Finally, in his sur-reply, Dr. Nekritin again complains of inadequate notice by the government and asserts that his "mere presence at the hearing does not qualify as a bad act or as evidence of criminal intent." (Nekritin Sur-Reply at 2.)

The court agrees with Dr. Nekritin that the evidence offered concerning an unrelated administrative proceeding is too attenuated to be probative of Dr. Nekritin's knowledge and intent in the instant case and risks unfair prejudice, confusion

of the issues, and misleading the jury. It is undisputed that Dr. Nekritin neither performed the CCGT services nor submitted the billings for the CCGT services at issue in the administrative proceeding. (Nekritin Opp. at 2-3; Gov't Reply at 3.) Indeed, at the time those services were performed and billed, Dr. Nekritin was not even employed in Dr. Sosnovsky's medical practice. (Nekritin Opp. at 2.) Further, although Dr. Nekritin attended the administrative hearing and testified about the claims submitted under Dr. Sosnovsky's PIN, he did not testify about the disputed CCGT services or billings. (*Id.* at 3.) The mere fact that Dr. Nekritin defended an overpayment demand by Medicare in a previous, unrelated proceeding has minimal bearing on and relevance regarding his intent and knowledge of the services and billing practices at issue in the instant case. *See United States v. Montour*, 944 F.2d 1019, 1028 (2d Cir. 1991) (finding that testimony regarding harassment of reservation residents was irrelevant to defendant's intent, and properly excluded, because the "alleged incidents were not related to the charges against [defendant]"). Therefore, evidence regarding the unrelated administrative proceeding will not be admitted.

Moreover, even if evidence concerning Dr. Nekritin's participation in an administrative proceeding relating to Dr. Sosnovsky's improper billings were relevant to Dr. Nekritin's

awareness of the billing code for CCGT, such evidence would nonetheless be inadmissible under Federal Rule of Evidence 403 because it is unfairly prejudicial and likely to mislead the jury and confuse the issues. Evidence is not "prejudicial" under Rule 403 merely because it tends to prove the defendant's guilt, but rather "[e]vidence is prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Figueroa*, 618 F.2d 934, 943 (2d Cir. 1980). In other words, "the prejudice must be unfair in the sense that it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to convict on the basis of conduct not at issue in the trial." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006); *United States v. Mahaffy*, 477 F. Supp. 2d 560, 565 (E.D.N.Y. 2007) (quoting *Quattrone*, 441 F.3d at 186). Here, any probative value of evidence concerning Dr. Nekritin's participation in an unrelated administrative proceeding would be substantially outweighed by the danger of confusing the issues and misleading the jury about the specific criminal conduct at issue in the instant case. *See* Fed. R. Evid. 403; *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009) (excluding evidence of fraud by a nonparty because such evidence has only tangential bearing, if any, on

11

disputed issues and "any probative value of this evidence is substantially outweighed by the possible confusion of the issues").  Accordingly, the government's first motion *in limine* to admit evidence regarding Dr. Nekritin's 2006 overpayment appeal, January 2008 appeal hearing, and the April 2008 ALJ Decision is denied, with leave to request reconsideration of this ruling as the case unfolds at trial.

**III. Exclusion of Evidence Concerning Legitimate Billing Practices**

The government contends that defendants should be precluded from introducing evidence that they submitted legitimate billings to Medicare and Medicaid, including, but not limited to, some billings for CCGT, because such evidence is not relevant.  (Gov't Second Mot. at 1-2.)  Further, to the extent that such evidence may be relevant, the government asserts that it should nonetheless be excluded under Rule 403 because any probative value would be outweighed by the likelihood that it would confuse the jury.  (*Id.* at 2.)

Dr. Nekritin opposes the government's motion, arguing that the cases cited in the government's papers are distinguishable on the facts.  Specifically, Dr. Nekritin argues that the cases cited by the government involve defendants who committed fraud against individual victims, in contrast to the instant case, where "Dr. Nekritin's patients allegedly

12

constituted the means by which the scheme or artifice defrauded" Medicare and Medicaid. (Nekritin Opp. at 7-8.) Therefore, Dr. Nekritin argues, his "ability to introduce evidence, in whatever fashion, concerning patients not deemed by the government as examples of fraudulent billing, is vital to attack the structure and scope of the alleged scheme and show that he did not engage in a scheme to defraud Medicare and Medicaid." (*Id.* at 7-8.) In his sur-reply, Dr. Nekritin argues that his treatment of "other, and arguably a greater number of patients than those the government has named, is distinctly relevant evidence demonstrating that he never participated in any scheme to defraud." (Nekritin Sur-Reply at 2.)

Evidence that a defendant charged with fraud engaged in other, non-fraudulent activity is generally irrelevant. While non-criminal activities may be relevant where the defendant is alleged to have engaged in "ceaseless" criminal conduct, "[a] defendant may not seek to establish his innocence . . . through proof of the absence of criminal acts on specific occasions." *United States v. Scarpa*, 913 F.2d 993, 1010-11 (2d Cir. 1990) (quoting *United States v. Scarpa*, 897 F.2d 63, 70 (2d Cir. 1990); *see also United States v. O'Connor*, 580 F.2d 38, 43 (2d Cir. 1978) (noting that the trial court correctly excluded testimony that witnesses did not pay defendant any bribes "because such testimony would in effect be an attempt to

demonstrate appellant's good character by proof of specific good acts"); *United States v. Gambino*, 838 F. Supp. 744, 748 (S.D.N.Y. 1993) (finding that testimony concerning prior good acts is not necessarily exculpatory because "defendant cannot introduce evidence of innocent behavior on other occasions to prove his innocence").

Here, the government seeks to prove that defendants' Medicare and Medicaid billing practices with respect to a limited number of patients were fraudulent, and not that all of defendants' Medicare and Medicaid billings were fraudulent. (Gov't Second Mot. at 3; *see* Ind't ¶¶ 20-21; ECF No. 52, Letter Providing Bill of Particulars and Rule 16 Discovery (listing 42 Medicare and/or Medicaid beneficiaries about whom the government intends to offer evidence at trial); ECF No. 54, Letter Supplementing the Government's Bill of Particulars (listing one additional Medicare and/or Medicaid beneficiary about whom the government intends to offer evidence at trial).) Where, as here, the government does not allege ceaseless, all-encompassing criminal conduct, evidence that defendants engaged in other, non-fraudulent conduct is not relevant to whether the charged conduct was fraudulent. *Scarpa*, 913 F.2d at 1010-11; *United States v. Walker*, 191 F.3d 326, 336 (2d Cir. 1990) (affirming district court's exclusion of evidence that defendant prepared some honest asylum applications and holding that "[w]hether

14

[defendant] had prepared other, non-fraudulent applications was simply irrelevant to whether the applications charged as false statements were fraudulent"). Accordingly, evidence of defendants' legitimate billing practices is not relevant to whether defendants fraudulently billed Medicare and Medicaid as charged.[8]

Neither Dr. Nekritin nor Dr. Loshakov asserts that the allegedly fraudulent billings were made without their knowledge or by mistake. Rather, Dr. Loshakov opposes the government's motion, asserting that "[i]f the Prosecution attempts to prove that there has been over $500,000 of fraud committed by [Dr. Loshakov] through such a small sampling of patients, we have the right to disprove this claim using whatever evidence we wish to present." (Loshakov Opp. at 1.)[9] Dr. Loshakov further argues that he must be permitted to introduce "any evidence," including evidence of other patients treated by defendants, in order to demonstrate that Dr. Loshakov was merely a per diem employee and

---

[8] Dr. Nekritin's attempt to distinguish the cases cited by the government fails. In *United States v. Walker*, as in the present case, the defendants were charged with a scheme to defraud. 191 F.3d at 334-35. The court has not found, and defendants do not cite, any legal authority supporting the argument that evidence concerning good acts is relevant where the victim of the scheme to defraud is a government agency or a benefit program rather than an individual. (*See* Nekritin Opp. at 7-8.)

[9] Because the second Superseding Indictment eliminated all references to a dollar amount of the alleged fraud, this argument is moot to the extent it is predicated on a fraud amount. (*Compare* Ind't ¶ 17, *with* ECF No. 27, Superseding Indictment (S-1) as to Vadim Nekritin and Igor Loshakov ¶ 17.)

15

not a co-conspirator in any alleged fraudulent billing scheme.
(*Id.*)

Dr. Loshakov, however, does not cite to any legal authority to support his argument that evidence of defendants' legitimate billing practices is relevant to disproving the dollar amount of the alleged fraud or the relationship between Drs. Loshakov and Nekritin with respect to the charged billings. Nor can the court discern an argument that would make such evidence relevant.

Accordingly, on the record presently before the court, evidence of other legitimate billings is neither relevant nor admissible. If, as the trial unfolds, defendants can articulate a reason why such evidence is relevant, the parties may request that the court revisit this *in limine* ruling.

**IV. Exclusion of Evidence That Medicare and Medicaid Should Not Have Paid The Claims**

Finally, the government seeks to preclude defendants from arguing that Medicare and Medicaid should not have paid their claims or that by paying their claims, Medicare and Medicaid led defendants to believe that their bills were justified. (Gov't Second Mot. at 3-4.) Specifically, the government asks the court to preclude defendants from (1) inquiring of any witness about what steps, if any, Medicare and Medicaid made to investigate the defendants' claims prior to

16

paying them; (2) arguing or suggesting during cross examinations that Medicare or Medicaid should have dealt with the defendants' fraud by simply denying the claims at issue; or (3) arguing that by paying prior claims of a similar nature, Medicare and Medicaid led the defendants to believe their billings under CPT Code 17250 were acceptable. (Gov't Second Mot. at 4-5.)

In his response, Dr. Nekritin asserts that in light of Medicare's "duty to promote the integrity of the Medicare program, in part through a process of auditing and educating its providers," Medicare's conduct is directly relevant to defendants' knowledge and intent. (Nekritin Opp. at 9.) In his sur-reply, Dr. Nekritin points to a February 25, 2009 post-payment audit report by Medicare, which reviewed and "allowed" Dr. Loshakov's documentation and billing for CPT Code 17250, and argues that such evidence should be allowed because it is "exculpatory." (Nekritin Sur-Reply at 1.) Although Dr. Nekritin's sur-reply does not indicate if the claims "allowed" by Medicare in 2009 relate to the same claims at issue, the government stated at the pre-trial conference on June 16, 2011 that one of the claims in the post-payment audit report does relate to one of the patients listed in the second Superseding Indictment. Additionally, Dr. Nekritin argues that the government's motion is premature and provides insufficient notice of the exact evidence it seeks to preclude, as the

defense has not yet determined if or how it will cross-examine the government's witnesses. (Nekritin Opp. at 8-9.) Dr. Nekritin asks the court to deny the government's motion and revisit the issue when "the relevance of particular Medicare payment evidence could be judged given a witness' direct testimony, or by an admissibility proffer from the defense for direct evidence in a direct case." (*Id.* at 9.)

It is well settled that a fraud victim's negligence in failing to discover the fraudulent scheme is not a defense to a defendant's criminal conduct. *United States v. Thomas*, 377 F.3d 232, 243 (2d Cir. 2004) (collecting cases and holding that the victim's negligence in failing to discover a fraudulent scheme is not a defense to criminal conduct). Thus, any evidence that a fraud victim was negligent or gullible is not relevant to the defendant's guilt or innocence for the charged fraud. *Id.*; *United States v. Amico*, 486 F.3d 764, 780 (2d Cir. 2007) (collecting and following cases holding that "a victim's lack of sophistication is not relevant to the intent element of mail or wire fraud"); *United States v. Holland*, 394 F. App'x 766, 768 (2d Cir. 2010) (finding that because "an innocent crime victim has no duty to detect a crime being perpetrated against it," any opportunity the victim had to detect the fraud and mitigate losses is "irrelevant to the order of restitution"). The court has not found, and defendants have not identified, any legal

18

authority to suggest that this rule does not apply when Medicare and/or Medicaid, rather than an individual, are the victims of the fraud.

Even if, as Dr. Nekritin suggests, Medicare reviewed the allegedly false claims in 2009 and "allowed" them to be paid (Nekritin Sur-Reply at 1), Medicare's negligence in failing to discover the fraud at that time is not a defense and therefore such evidence is neither "exculpatory" nor relevant to the issues in the instant case. Accordingly, the court precludes defendants from arguing or presenting evidence that Medicare and Medicaid's payment of their claims is a defense to health care fraud. If, as the case unfolds at trial, defendants can articulate a reason why such evidence is relevant, the parties may request that the court revisit this *in limine* ruling.

## **CONCLUSION**

For the reasons set forth above, the government's 5/25/11 motion *in limine* is denied and the government's 5/31/11 motion *in limine* is granted.

SO ORDERED.

Dated: June 17, 2011
      Brooklyn, New York

                                         _____/s/_____
                                         Hon. Kiyo A. Matsumoto
                                         United States District Judge
                                         Eastern District of New York